HIRAM L. SPARROW, ADMR. ET AL. *v.* VERMONT SAVINGS BANK.

October Term, 1921.

Present: WATSON, C. J., POWERS, TAYLOR, and MILES, JJ., and BUTLER, Supr. J.

Opinion filed June 24, 1922.

*Estoppel—Bank Deposits—Trust Funds—Burden of Identifying Particular Deposits—Effect of Intermingling Trust and Personal Funds in a Bank Deposit Where Amount of Each Is Known—When Bank Put Upon Inquiry Respecting Withdrawals—Question of Law—Appeal—Findings in Report of Chancellor Not Excepted to Will Not Be Reviewed.*

1. An administratrix of an estate delivered a sum of money belonging to the estate to another person with instructions to deposit it in the defendant bank in the name of the estate, but instead he deposited it in his name as trustee for the administratrix and her two daughters, the persons entitled to the estate, who learned of the facts concerning the deposit the same year it was made and did not communicate with the bank until eight years later, after the account was closed. *Held* that such beneficiaries were estopped from claiming that the deposit was made and carried in an unauthorized name.

2. In an action by an administrator and the heirs of an estate, to recover money belonging to an estate, deposited in defendant bank by a person in his own name as trustee for those entitled to share in the estate, where the account contained a number of deposits and withdrawals, none of which the *cestuis* were able to identify as belonging to them except one *deposit*, *held*, that the chancellor properly disallowed all items other than such deposit as a basis of recovery in the action.

3. Where a trustee had an account in defendant bank, standing in his name as trustee for certain beneficiaries, but used it as well for his personal account, and there was but one deposit thereon that was of an actual trust character, the amount of which was certain, after such amount had been withdrawn by orders or drafts properly signed by him as trustee, the defendant could not be held responsible by reason of the fact that it subsequently paid a draft from said account, signed by the trustee personally, for such money belonged to him individually and the *cestuis* had no interest therein.

4. Under such circumstances, though the chancellor found as a fact that the defendant was put upon inquiry, by receipt of a draft signed by the trustee personally, as to whether it was on the trust fund, such finding does not establish defendant's liability, for whether it was put upon inquiry was not a question of fact, but one of law, to be determined upon the chancellor's findings as to the facts and circumstances connected with the entire transaction.

5. When a trustee intermingled his own money with a trust fund, by depositing them in the same account in a bank, and the amount belonging to each was known, the entire account is not charged with the trust, and the trustee could withdraw therefrom what belonged to him by orders signed by himself personally.

6. Where no exception was taken to a chancellor's report as to certain findings, they will not be considered on appeal, as an appeal only brings up for review questions reserved below.

APPEAL IN CHANCERY.   Bill for an accounting by defendant for money belonging to an estate, deposited in defendant bank by a person in his name as trustee for the individuals entitled to share in the estate.   Heard on bill, answer, and findings of fact filed by the chancellor in vacation after the March Term,

1921, Washington County, *Slack,* chancellor. Decree for plaintiff, Hiram L. Sparrow, administrator, against the defendant, and for defendant to recover its costs against plaintiffs Clara B. Lowe and Ella M. Bailey. The defendant appealed. The opinion states the case. *Affirmed* as to Clara L. Lowe and Ella M. Bailey. *Reversed and remanded* with directions as to Hiram L. Sparrow, adminstrator.

*Harvey, Maurice & Fitts* and *E. W. Gibson* for the defendant.

*Frank Plumley* and *H. C. Shurtleff* for the plaintiffs.

MILES, J. This is a bill in chancery for an accounting by the defendant for money received from Harry Lowe as trustee of Mrs. Harriet Bailey, Ella M. Bailey and Clara B. Lowe. The case was heard by the chancellor, facts were found and a decree rendered for the plaintiff Sparrow to recover from the defendant the sum of one thousand dollars, being the payment of a draft of that amount by the defendant to Henry Clews & Company, and the further sum of $457.40, being the balance due on the so-called "trustee account," with interest on the same to August 15, 1921, in all amounting at that date to $4,049.08, and for the defendant against the other plaintiffs to recover its costs. The case comes here on the appeal of the defendant. As stated by the defendant only two questions are presented for review. The first relates to the application of the two withdrawals above mentioned, and the second relates to the statute of limitations.

[1]    In 1880 J. Warren Bailey died, leaving a widow, Harriet Bailey, now deceased, of whose estate, as well as that of J. Warren Bailey, the plaintiff Sparrow is administrator. After the death of Bailey the greater part of his estate was distributed equally among the widow and the daughters, In 1895, Mrs. Harriet Bailey, then the administratrix of Bailey's estate, received $5,300 belonging to his estate, and, instead of then dividing it, she delivered it to Harry Lowe, the husband of Clara B. Lowe, with directions to deposit it in the defendant bank in the name of J. Warren Bailey's estate. Instead of doing so, he deposited it in his own name as trustee for the widow and daughters.

The record before us shows that the account in defendant bank was opened April 2, 1895, by Lowe's depositing therein the $5,300 received from Mrs. Harriet Bailey, in the name of "Harry Lowe, Trustee for Harriet Bailey, Ella M. Bailey and Clara B. Lowe," the first being the widow of the deceased and administratrix of his estate, and the latter two being daughters of the deceased and Harriet. While the administratrix directed Lowe to make the deposit in the name of J. Warren Bailey's estate, she and the two daughters learned in the same year (1895 probably) how the account was opened, and took no steps to have it changed, nor even communicated with the bank concerning it until 1903, after the account was closed. Plaintiffs are not, therefore, in a position to question the form in which the deposit was made, and the account opened.

The account ran until May 8, 1901, when the balance of it, $2.75, was paid to Lowe by New York draft of that date. Lowe made a large number of deposits on the account, the last deposit being made on February 5, 1901. The chancellor was unable to find how much of this, after the first deposit, was in effect redeposits or how much of it originally belonged to any one of the three women, or how much of it was money loaned to Harry Lowe or used by him as stated in the findings. All the money, except the $2.75, was paid out by the bank on checks, orders, drafts, etc. (exhibits in the case) drawn by Lowe.

[2] It should be borne in mind that the burden is on the plaintiffs to make out their case. But they were not able to identify any of the items of deposit in the account, except that of the $5,300, which belonged to the three women in equal shares and which had never been divided. So the chancellor disallowed, and rightly, all items of deposit, except that one, as a basis of recovery in this action. The question then is: Does that item form a basis of recovery in this action, in the circumstances shown by the record?

[3] We have then this situation: The so-called "trust account" running from April 2, 1895, to May 8, 1901, aggregating on its face more than $70,000, was, so far as anything in this case appears, money belonging to Harry Lowe personally, or money which he had a right to use as his own, except the first item of $5,300 deposited April 2, 1895, which belonged to the three women, and which was deposited by Harry Lowe as trustee for them.

The first order drawn by Lowe, that was signed by him personally, was the one drawn for the check or draft sent to Henry Clews & Company, September 6, 1895. Up to that time Lowe had made three deposits of his own money, or money that he had a right to use, on the following dates: July 6, 9, and 13, in all amounting to $4,100. The account, therefore, on September 6, 1895, on the deposit side, consisted of $4,100, of money that Lowe had a right to use personally and $5,300 of the money belonging to the women. While here was a mingling of money in that account, yet the funds were not so mingled as to make them inseparable, when considering questions involving the responsibility of the bank for any misappropriations which Lowe may have made of money drawn therefrom by him. Let us assume that the bank had sufficient knowledge of the trust character of the deposit of the $5,300, to put it upon inquiry in case circumstances should arise reasonably making it the duty to inquire for its own protection, before honoring a particular draft drawn by Lowe personally against it, such knowledge could pertain to that item of deposit only; for no other item of deposit was of a trust character. The bank must have known this, and it had a right to act accordingly, that is, to honor all orders or drafts drawn upon that deposit of $5,300, signed "Harry Lowe, Trustee," and for the other deposits of the account, the bank had the right to honor all drafts or orders signed by Harry Lowe personally.

Observing this distinction, let us see what was the aggregate amount of drafts or orders of the first class, drawn by Lowe and honored by the bank before September 6, 1895, the day the draft of $1,000 was sent to Henry Clews & Company, pursuant to the order signed by Lowe personally.

It appears that withdrawals were made on formal drafts or orders signed: "Harry Lowe, Trustee," at and before September 6, 1895, amounting to $6,998.86.

Thus it is seen, that prior to and on the date of the draft to Henry Clews & Company all the trust money, including interest that may have accrued thereon and have been credited on the account, was withdrawn from the bank on drafts or orders signed, "Harry Lowe, Trustee," and which the bank had the legal right to honor, and which the chancellor has allowed as proper charges against the account. This being so, the plaintiffs have no claim against the bank in connection with its paying the $1,000 to

Henry Clews & Company, from the other money represented belonging to Lowe. The plaintiffs had no interest in that money, and the bank was not put upon inquiry by the order for the draft that was sent Henry Clews & Company.

[4]   Though the chancellor has found as a fact that the defendant was thereby put upon inquiry, and held the bank liable because it failed to make such inquiry; that finding failed to establish the liability of the defendant. The finding was not a finding of fact. The chancellor having found the facts and circumstances connected with the entire transaction, it was a question of law, on those facts and circumstances, whether the bank was put upon inquiry, *Birdsall* v. *Russell,* 29 N. Y. 220, 248, 249.

[5]   Notwithstanding that Lowe mingled his own money with the trust money, by depositing them in the same account in the defendant bank, being money (goods of the same quality and value, dollar for dollar), the two funds were easily distinguishable, and the share of each owner known or readily ascertained. In *Samson* v. *Rouse,* 72 Vt. 422, 48 Atl. 666, it is said: "The principle here sought to be invoked, that if an agent or trustee mingles trust funds with his own, the whole will be treated as trust property, except so far as he may be able to distinguish what is his own, is not applicable. The statement of the principle shows its limitation. If the trust property may all be distinguished from the property with which the same is mingled, it will be so done, and the whole intermixture is charged with the trust only when the trust property cannot be thus distinguished. The rule is carried no further than necessity requires." The confusion of goods of the same kind and quality presents no difficulty where the quantity of each owner is known. 5 R. C. L. 1054, par. 8. In the instant case the quantity of each owner was known. As we have seen Lowe's personal deposit was $4,100, and his trust deposit was $5,300. The court, therefore, erred in holding the defendant chargeable for the order drawn for the draft sent to Henry Clews & Company, and for the $457.40, a balance left of the account after that order was drawn, for the reason that, according to the findings, Lowe had the right to draw both amounts from the account on orders signed by himself personally.

The contract of deposit was with Lowe as trustee. The bank had no other course than to honor his orders when properly

signed, and could rely upon the presumption that the withdrawals would not be misapplied. *Hewett* v. *Hays*, 205 Mass. 356, 91 N. E. 332, 137 A. S. R. 448; *Hale* v. *Windsor Savings Bank*, 90 Vt. 487, 98 Atl. 993.

This proceeding is in equity, and the defendant is as innocent of any wrong as are the plaintiffs who put into the hands of Lowe the possibility and opportunity of doing the wrong complained of, and the solution we have here made does equal justice to both parties.

[6]    The plaintiffs, however, claim that the chancellor erred in finding that the order of July 9, 1895, of $3,000.99, and the order of July 30, 1895, of $2,000, though signed, "Harry Lowe, Trustee," were properly chargeable against the trust fund and that they can avail themselves of that error, though no exception to the finding was taken below, and they cite in support of this contention, *Cooley* v. *Hatch*, 91 Vt. 128, 99 Atl. 784. But that case does not support that contention. There the appellee had excepted to the report, and the appeal, as there stated, brought up the whole case and the appellee's exception with it. Here there was no exception to the chancellor's report in respect to those withdrawals. While the appeal vacated the decree and took the entire case to this Court, as held in *Cooley* v. *Hatch*, it brought up only such questions for review as were reserved below. Where an exception is taken, to entitle it to consideration, the excepting party must clearly and briefly specify, not only the matter excepted to, but also the grounds of the exception as well. *Fife and Child* v. *Cate et al.*, 85 Vt. 418, 428, 82 Atl. 741; Chancery Rule 29. To the disallowance of these withdrawals, no exception was taken by the plaintiffs, and hence the question as to the chancellor's disallowance thereof, is not presented for review.

In the view we have taken of the case, it is unnecessary to consider the other questions argued.

*Decree affirmed as to Clara D. Lowe and Ella M. Bailey, and as to Hiram L. Sparrow, administrator, it is reversed and remanded with direction that the bill be dismissed with costs to the defendant.*